In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-2413

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RICHARD TURNER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 CR 00255—**Samuel Der-Yeghiayan**, *Judge.*

ARGUED JANUARY 14, 2009—DECIDED JUNE 17, 2009

Before CUDAHY, KANNE, and TINDER, *Circuit Judges*.

KANNE, *Circuit Judge*. Richard Turner was a drug
dealer operating in Chicago Heights, Illinois. He engaged
in two drug sales in 2004 that formed the basis of his
subsequent indictment, conviction, and sentence. The
first occurred on September 30, when, in exchange for
$800, Turner sold approximately 25.4 grams of crack
cocaine to a government informant. The second sale was on
October 7, when Turner sold the same individual ap-
proximately 26.4 grams of crack cocaine, again for $800.

Combined, Turner sold a total of slightly less than fifty-two grams of crack cocaine to the government informant.

On May 16, 2007, a federal grand jury returned a two-count indictment charging Turner with knowingly and intentionally distributing five grams or more of a mixture or substance containing crack cocaine, in violation of 21 U.S.C. § 841(a)(1). On January 10, 2008, Turner pled guilty to Count One of the indictment pursuant to a written plea agreement and admitted the facts contained in Count Two. The district court later sentenced Turner to 136 months' imprisonment and five years' supervised release.

On appeal, Turner contends that the district court erred by not considering various mitigating factors when calculating his sentence. The list of suggested errors is long but not particularly impressive. It includes, *inter alia*, claims of sentencing manipulation, sentencing entrapment, disproportionate sentencing, poor conditions of presentencing confinement, and an overall misapplication of Turner's circumstances to the factors established in 18 U.S.C. § 3553(a).

Our review of sentencing decisions typically proceeds in two steps. *See United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008). First, we ensure that the district court did not commit any "significant procedural error," examples of which include failing to calculate, or improperly calculating, the applicable Guidelines range; treating the Guidelines as mandatory; or failing to consider the § 3553(a) factors. *Id.*; *see also Gall v. United States*, 128 S. Ct. 586, 597 (2007) (explaining the procedures a court must

follow during sentencing). Once convinced that the sentencing judge followed correct procedure, we then consider the reasonableness of the sentence. *Jackson*, 547 F.3d at 792.

Turner does not raise any challenges to the procedural soundness of his sentencing proceedings, nor does our review of the record reveal any procedural irregularities. Turner frames his arguments in terms of the court's failure to grant "downward departures," which one could construe as a procedural challenge, i.e., that the district court improperly calculated the applicable Guidelines range. But it is well established that after *United States v. Booker*, 543 U.S. 220 (2005), which rendered the Sentencing Guidelines advisory, "downward departures," *per se*, have become obsolete. *United States v. Simmons*, 485 F.3d 951, 955 (7th Cir. 2007) (quoting *United States v. Spano*, 476 F.3d 476, 480 (7th Cir. 2007)). Instead, such arguments should be placed in the context of the § 3553(a) factors, which a sentencing court must consider in determining a sentence. *See Gall*, 128 S. Ct. at 596; *see also* 18 U.S.C. § 3553(a); *cf. United States v. Schroeder*, 536 F.3d 746, 755-56 (7th Cir. 2008) (instructing, in the context of U.S.S.G. § 5H1.6, that a court "'may apply [obsolete] departure guidelines by way of analogy in analyzing the section 3553(a) factors'" (quoting *United States v. Miranda*, 505 F.3d 785, 792 (7th Cir. 2007))).

One claim merits additional explanation regarding the procedural/substantive distinction. As we will discuss below, Turner raises a claim based on § 4A1.3(b) of the Sentencing Guidelines: a "downward departure" provision

that grants sentencing judges the discretion to use a lower criminal history category to effectuate a lower sentence when the judge concludes that a defendant's otherwise applicable criminal history category "substantially over-represents" his past transgressions. *See also* U.S.S.G. § 1B1.1 cmt. n.1(E). But that is a discretionary decision that has nothing to do with "correct" Guidelines calculation. For that reason, it is not a procedural error, but rather a substantive decision that we will review for reasonableness.

Thus, we construe all of Turner's arguments as challenges to the substantive reasonableness of the imposed sentence. When, as here, the district court followed proper procedures in determining a sentence within the applicable Guidelines range, we presume that the sentence was reasonable and review only for an abuse of discretion. *See Gall*, 128 S. Ct. at 597 ("Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard."); *Rita v. United States*, 551 U.S. 338, 346 (2007) (concluding that appellate courts may apply a "presumption of reasonableness" to "within-Guidelines" sentences); *see also Booker*, 543 U.S. at 260-63 (discussing the "reasonableness" standard under which appellate courts must review sentences imposed under the now-advisory Sentencing Guidelines). In conducting this deferential review, we will set aside factual findings underlying the sentence only if they are clearly erroneous, *United States v. Bothun*, 424 F.3d 582, 586 (7th Cir. 2005), and we review questions of law *de novo*, *United States v. Bonanno*, 146 F.3d 502, 510

(7th Cir. 1998). Bearing these issues in mind, we now turn to the substance of Turner's arguments, beginning with his claims under the related doctrines of sentencing manipulation and sentencing entrapment.

In *United States v. Garcia*, 79 F.3d 74 (7th Cir. 1996), we distinguished claims of sentencing manipulation from those of sentencing entrapment. Sentencing manipulation arises "when the government engages in improper conduct that has the effect of increasing a defendant's sentence." *Id.* at 75. Sentencing entrapment, meanwhile, "occurs when the government causes a defendant initially predisposed to commit a lesser crime to commit a more serious offense." *Id.*

In support of his sentencing manipulation claim, Turner states that the government had enough evidence to convict him after the first controlled drug buy on September 30, and that the purpose of the second controlled drug buy was merely to increase his sentence. Turner's sentencing entrapment claim is based on his self-proclaimed status as a small-time, "dime-bag" dealer who was not predisposed to sell the quantity of drugs requested by the informant.

We dispatch first with Turner's sentencing manipulation claim. As the district judge acknowledged, our circuit does not recognize the sentencing manipulation doctrine. *Id.* at 76; *see also United States v. White*, 519 F.3d 342, 346 (7th Cir. 2008); *United States v. Veazey*, 491 F.3d 700, 710 (7th Cir. 2007). Turner concedes this precedent but encourages us to reconsider the court's position, pointing to other circuits that have reached the opposite

conclusion. *See, e.g., United States v. Ciszkowski*, 492 F.3d 1264, 1270 (11th Cir. 2007) (recognizing sentencing manipulation as "a viable defense"); *United States v. Rizzo*, 121 F.3d 794, 801 & n.11 (1st Cir. 1997). We decline Turner's invitation. There is no constitutional right to be arrested at the exact moment that police acquire probable cause. *Garcia*, 79 F.3d at 76. We will defer to the discretion of law enforcement to conduct its investigations as it deems necessary for any number of reasons, including, for example, to ensure that there is sufficient evidence to obtain a conviction, to obtain a "greater understanding of the nature of the criminal enterprise," and to ensnare co-conspirators. *Id.*

Turner's sentencing entrapment argument suffers the same fate, albeit for different reasons. Unlike sentencing manipulation, sentencing entrapment is a doctrine that our court does recognize. To succeed on such a claim, however, a defendant must pass a high bar, which Turner fails to do. The defendant must show (1) that he lacked a predisposition to commit the crime, and (2) that his will was overcome by "unrelenting government persistence." *United States v. Gutierrez-Herrera*, 293 F.3d 373, 377 (7th Cir. 2002) (quotations omitted). The government may rebut such claims by demonstrating that the defendant was predisposed to violate the law without "'extraordinary inducements.'" *White*, 519 F.3d at 347 (quoting *Veazey*, 491 F.3d at 710).

In *White*, the defendant, Juan White, was the subject of a drug investigation and sold 57.2 grams of crack to a repeat customer who, unbeknownst to White, was cooperating

with the government. *Id.* at 344. On appeal, White argued that the government instructed the informant to buy a large amount of cocaine only to trigger a higher sentence. *Id.* at 346. We refused to grant relief, stating: "In spite of the fact that the purchase was a departure from [the informant's] previous buying patterns with White, the fact that White, a drug dealer with a history of dealing crack, readily acceded to [the informant's] request undercuts any possible theory of sentence entrapment in this case." *Id.* at 347.

We see no notable distinctions between this case and *White*. Turner has a history of selling crack, which he has admitted to doing for a number of years prior to his arrest. He presents no evidence that the government was unrelenting in its attempts to purchase higher quantities of drugs than he usually sold or engaged in inducements that were otherwise extraordinary. In his brief, Turner offers only that he was "surprised" to receive such a large order, but surprise is certainly no substitute for a lack of predisposition. And at oral argument, Turner's counsel conceded that there were no examples of extraordinary inducement or unrelenting pressure. As a result, we find no merit in Turner's claims for sentencing entrapment.

Turner's complaints regarding the conditions of his presentencing confinement are no more successful. Turner was housed in the Kankakee County Jail, a county correctional facility that contracts with the United States Marshals Service to house federal prisoners. Turner claims, *inter alia*, that he was not given nutritious food, reasonable

medical care, clothing, educational classes, or sanitary conditions in which to live. The district judge found that none of these conditions rose to a level warranting sentencing relief. We agree.

Our prior decisions make clear that conditions of presentencing confinement are not considered as part of the § 3553(a) factors. *See United States v. Campos*, 541 F.3d 735, 751 (7th Cir. 2008); *United States v. Martinez*, 520 F.3d 749, 752-53 (7th Cir. 2008); *United States v. Ramirez-Gutierrez*, 503 F.3d 643, 645-46 (7th Cir. 2007).[1] And, although we have not determined whether "extraordinarily harsh conditions of confinement" could justify a reduced sentence, *Campos*, 541 F.3d at 751, we need not make such a decision here.

Turner has not supported his claims of poor presentencing confinement with any evidence. *See id.* ("[E]ven if unduly harsh conditions could justify a lower sentence, [the defendant] has not supported his claims of his pretrial conditions with any evidence."). And his claims are similar to those that we have previously found not to be "unusually harsh." *See Ramirez-Gutierrez*, 503 F.3d at 646 (concluding that conditions at Kankakee County Jail did not merit relief when defendant complained of lack of medical attention for a broken tooth,

---

[1] Both *Campos*, 541 F.3d at 751, and *Ramirez-Gutierrez*, 503 F.3d at 645-46, discuss pretrial and presentencing conditions interchangeably. Although most cases in our circuit have dealt with pretrial conditions, we see no reason to distinguish between the two.

lived in poorly ventilated quarters, and was given inadequate opportunity to exercise). Even if we accept Turner's claims as true, they do not rise to the "truly egregious" level that would cause us to consider whether sentencing relief could be an appropriate remedy in such circumstances. *See id.* (discussing two examples of what might be egregious enough to warrant consideration for sentencing relief). We refuse to grant Turner any relief based upon his conditions of presentencing confinement.

Next, Turner argues that being placed in criminal history category VI "substantially over-represent[ed] the seriousness of the defendant's criminal history," quoting the policy statement in U.S.S.G. § 4A1.3(b)(1). In such situations, the Guidelines grant sentencing judges the discretion to utilize a lower criminal history category than would otherwise be appropriate as a means "to effect a sentence outside the applicable guideline range." *Id.* § 1B1.1 cmt. n.1(E); *see also id.* § 4A1.3(b)(1) (specifying that in appropriate circumstances a downward departure "*may* be warranted" (emphasis added)). As an example, the Guidelines state that "two minor misdemeanor convictions close to ten years prior to the instant offense [with] no other evidence of prior criminal behavior in the intervening period" might over-represent the defendant's criminal history and therefore warrant such a reduction. *See id.* § 4A1.3(b)(1) cmt. n.3.

The transcript of the sentencing hearing makes it clear that there was no abuse of discretion here. The judge discussed Turner's argument at length and decided against assigning a lower criminal history category,

commenting on Turner's "extensive criminal history as an adult that has indicated a complete disregard for the law in the past." Indeed, the record demonstrates that Turner had thirty-four adult convictions for an array of offenses, including at least one per year from 2001 to 2006. Fifteen of these convictions were used for purposes of calculating Turner's criminal history points. As the judge said:

> Illegal drug trade causes untold harm to society and defendant's participation in that drug trade even as a buyer or recipient contributed to that harm. Defendant has also been arrested of drinking in public, criminal trespass to real property, disorderly conduct, driving under the influence of alcohol. In addition to the criminal convictions, the defendant has numerous other arrests. These include the manufacture and delivery of controlled substance, gambling, operating an uninsured motor vehicle, possession of controlled substance, violation of bail bond, domestic battery, criminal trespass to land, delivery of cocaine near school or public housing. Some of these arrests involve charges of violence on the part of the defendant.

The judge then proceeded through a lengthy and detailed discussion of Turner's criminal history, which is a far cry from the Guidelines' example of two misdemeanors ten years prior to the present offense. *See id.* § 4A1.3(b)(1) cmt. n.3; *see also United States v. Bradford*, 78 F.3d 1216, 1223-24 (7th Cir. 1996) ("The example makes clear that the Sentencing Commission considered a departure

warranted only in those instances where defendants had steered clear of crime for a substantial period of time and whose prior offenses were relatively minor in terms of violence or danger to the community.”). The judge was well within his discretion to decide that Turner's criminal history deservedly placed him in category VI.

The district judge went through the remainder of the issues that Turner now raises on appeal in a similarly methodical way, discussing and disposing of each in a lengthy and thorough discourse. In succession, the judge discussed Turner's lack of education; his desire to improve his life, receive education and training, and obtain meaningful employment; his addiction to drugs and alcohol; and the remorse he had expressed over his past actions. The judge expressly considered each of the issues in the context of the § 3553(a) factors before reaching what he believed to be an appropriate sentence within the applicable Guidelines range. We fail to see how such a deliberate decision could be an abuse of discretion. There is certainly nothing in the record to disturb the presumption of reasonableness that we accord such a decision.

For the foregoing reasons, we AFFIRM Turner's sentence.