NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 17, 2013
Decided January 16, 2014

**Before**

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*


No. 13-1399

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District Court for the Central District of Illinois. |
| *Plaintiff-Appellee*, | |
| *v.* | No. 11-40117-002 |
| FREDDY PERKINS, JR., | James E. Shadid, |
| *Defendant-Appellant*. | *Chief Judge*. |


**O R D E R**

Freddy Perkins, Jr., was convicted by a jury of conspiracy to distribute and possess with intent to distribute at least 280 grams of crack cocaine and sentenced to the statutory minimum—240 months' imprisonment. *See* 21 U.S.C. §§ 846, 841(b)(1)(A). On appeal he argues that the district court erred by rejecting his claims of sentencing entrapment and sentencing manipulation, enhancing his sentence because of a prior felony conviction, and concluding that the drug quantity for which he was accountable involved more than 280 grams. We affirm.

After more than two years of investigation, in late 2011 law-enforcement officers executed a search warrant at Perkins's residence in Kewanee, Illinois, where they discovered 56.1 grams of crack and arrested Perkins and his girlfriend Shiree Russell. Perkins was indicted, along with Russell's mother, Charity McKnight, for conspiring to distribute and possess with intent to distribute at least 280 grams of crack. *See id.* §§ 846, 841(a)(1), 841(b)(1)(A). Perkins pleaded not guilty and proceeded to trial. The government filed notice of its intent to seek a penalty enhancement under § 841(b)(1)(A)(iii) because Perkins had a prior felony drug conviction (just weeks earlier he had been convicted in Henry County, Illinois, of unlawfully possessing a controlled substance). A jury found Perkins guilty of conspiring to distribute and possess with intent to distribute at least 280 grams of crack.

Nearly three months later Perkins moved to vacate the verdict, arguing, among other things, that he and McKnight had never agreed to distribute 280 grams. The judge denied the motion, explaining that McKnight's trial testimony supported the verdict. The case proceeded to sentencing. In the presentence investigation report, the probation officer recommended a sentence of 240 months—the statutory minimum under § 841(b)(1)(A)(iii)—based on Perkins's prior felony drug conviction and a drug quantity of more than 280 grams of crack. The probation officer estimated that the conspiracy involved at least 1,456 grams. The estimate was based on McKnight's proffer report and trial testimony describing Perkins's and Russell's weekly purchases of an ounce of crack for resale (one ounce per week for one year), as well as reports by the Blackhawk Area Task Force and the Drug Enforcement Agency assessing the conspirators' sales at 300.4 grams (56.7 grams of which were based on statements by customers Vikkeda and India Johnson).

Perkins objected to the PSR's conclusions. First, he disputed the drug quantity, challenging the 280 grams of crack imputed to him as well as the 1,456 grams attributed to the conspiracy as a whole. Second, he argued that the government engaged in sentencing entrapment and sentencing manipulation by arranging controlled purchases after his release from custody on his state controlled-substance charge; this conduct, he said, should preclude any enhancement under § 841(b)(1)(A)(iii). He also asserted that since the controlled-substance conviction occurred during, and was part of, the federal conspiracy to distribute crack, it should not be considered a prior conviction for the purpose of enhancing his sentence.

The district court sentenced Perkins to the 240-month statutory minimum based on its finding that the conspiracy involved more than 280 grams of crack. *See id.*

§ 841(b)(1)(A)(iii). The court justified this quantity based on McKnight's testimony that she used crack almost every day—testimony that, the court explained, gave rise to a reasonable inference that she sold crack nearly every day as well. But the court found that McKnight's testimony did not support the PSR's estimate that the conspiracy involved at least 1,456 grams. And the district court implicitly rejected Perkins's claims of sentencing entrapment and manipulation, remarking generally that "there's other conduct after the Henry County conviction that supports the enhancement."

Perkins contends on appeal that the district court erred by not vacating the verdict or reducing his sentence because of alleged sentencing entrapment. He surmises that investigators had probable cause to arrest him before his prior controlled-substance conviction but delayed arresting him until after his controlled-substance conviction became final and they could arrange additional controlled buys in order to charge him under § 841(b)(1)(A)(iii)'s penalty enhancement.

Although the district court did not explicitly analyze Perkins's sentencing entrapment claim, it did not err in implicitly rejecting it. To prove that he was entrapped, Perkins needed to show "(1) that he lacked a predisposition to commit the crime, and (2) that his will was overcome by 'unrelenting government persistence.' " *United States v. Turner*, 569 F.3d 637, 641 (7th Cir. 2009); *United States v. Gutierrez-Herrera*, 293 F.3d 373, 377 (7th Cir. 2002). Predisposition to continue the conspiracy was plainly evident from Perkins's involvement in the conspiracy for more than a year before the state-court conviction. And there was no evidence of "unrelenting government persistence." After his state controlled-substance conviction, investigators arranged two controlled purchases of crack in quantities consistent with his preconviction sales—far from the extraordinary levels of persistence required to show entrapment. *See United States v. Mandel*, 647 F.3d 710, 718 (7th Cir. 2011).

Perkins further argues that the district court should have vacated the jury's verdict because law enforcement allegedly manipulated his sentence by waiting to arrest him until after his state controlled-substance conviction became final—so that he would receive a longer sentence under § 841(b)(1)(A)(iii)'s penalty enhancement— instead of arresting him as soon as it had probable cause. Perkins recognizes that we have consistently refused to recognize sentencing manipulation as a defense, *see United States v. Long*, 639 F.3d 293, 300–01 (7th Cir. 2011); *Turner*, 569 F.3d at 641; *United States v. Garcia*, 79 F.3d 74, 76 (7th Cir. 1996), but he urges us to follow other circuits' lead and apply the theory here, *see United States v. Torres*, 563 F.3d 731, 734–35 (8th Cir. 2009); *United States v. Jaca-Nazario,* 521 F.3d 50, 57–58 (1st Cir. 2008); *United States v. Gagliardi,*

506 F.3d 140, 148–49 (2d Cir. 2007).

Perkins has not presented any persuasive reason for us to reexamine our position on sentencing manipulation, which has been embraced by at least four other circuits. *See United States v. Guest*, 564 F.3d 777, 781 (6th Cir. 2009); *United States v. Hinds*, 329 F.3d 184, 188 (D.C. Cir. 2003); *United States v. Tremelling*, 43 F.3d 148, 151–52 (5th Cir. 1995); *United States v. Jones*, 18 F.3d 1145, 1154–55 (4th Cir. 1994). We have rejected sentencing manipulation as a defense because law enforcement needs discretion to prolong its investigations so that it may gather sufficient evidence, better understand the nature and scope of criminal operations, and catch coconspirators. *Long*, 639 F.3d at 301; *Turner*, 569 F.3d at 641; *Garcia*, 79 F.3d at 76. Perkins has not mounted a serious substantive challenge to our position, so we see no reason to revisit our precedent.

Perkins also argues that the district court erred by considering his controlled-substance conviction as a "prior conviction." He seems to argue that the controlled-substance conviction should not be deemed "prior" because it occurred after the conspiracy began and may have been related to the conspiracy.

The district court did not err in treating Perkins's controlled-substance conviction as a prior conviction under § 841(b)(1)(A). Because "the purpose of the mandatory minimum enhancement [under § 841(b)(1)(A)] is to target recidivism, … it is more appropriate to focus on the degree of criminal activity that occurs after a defendant's conviction for drug-related activity is final rather than when the conspiracy began." *United States v. Garcia*, 32 F.3d 1017, 1019–20 (7th Cir. 1994); *United States v. Moody*, 564 F.3d 754, 759 (5th Cir. 2009); *United States v. Lino*, 493 F.3d 41, 43–44 (1st Cir. 2007); *United States v. Martino*, 294 F.3d 346, 349–50 (2d Cir. 2002). What matters is the "degree of criminal activity" after the defendant's prior conviction, not the length of time between his prior conviction and continued involvement in the conspiracy. *Garcia*, 32 F.3d at 1020; *Hagins v. United States*, 267 F.3d 1202, 1208 (11th Cir. 2001) (prior conviction became final five days before end of conspiracy); *United States v. Howard*, 115 F.3d 1151, 1158 (4th Cir. 1997) (36 days between prior conviction and arrest for conspiracy). The district court here properly considered Perkins's controlled-substance conviction as a prior conviction because he continued to participate in the conspiracy after—and despite—the conviction: He sold crack at least one more time, and law-enforcement officers seized more than 56 grams from his house when they arrested him in November 2011.

Finally, Perkins challenges the district court's drug-quantity finding, arguing that

the statements of McKnight and the Johnsons were unreliable. He says that McKnight's statements were unreliable because she was a drug user. We cannot review this argument because an appellant who wishes to challenge the sufficiency of the evidence must "include in the record a transcript of all evidence relevant to that finding or conclusion," FED. R. APP. P. 10(b)(2), and Perkins failed to provide a transcript of McKnight's trial testimony, *see Morisch v. United States*, 653 F.3d 522, 529–30 (7th Cir. 2011). Perkins also says that the Johnsons' statements were unreliable because they were never introduced at trial. But the Johnsons' statements are irrelevant to the drug-quantity finding because the district court credited McKnight's trial testimony as sufficient for the jury to find that the conspiracy involved at least 280 grams.

AFFIRMED.